Next Case 123-2152 W.C. Scott Conklin Appellant by Jeffrey Alter v. Illinois Workers' Compensation Comm'n at All City of Chicago OEMC Appley by Michelle Lafayette Mr. Alter, you may proceed. Thank you. May it please the Court, Jeffrey Alter with Anne C. Osmond on behalf of the Appellant, Scott Conklin. Thank you for your time this afternoon. I'll jump right into what the issue is and why we're here today. We're here basically because Respondent had sent out a questionnaire to the Petitioner requesting information, and the questionnaire specifically stated that compensation was going to be based upon the questions and answers contained therein, which again, at that point, benefits were then terminated based upon the failure to complete that questionnaire, which brings us to where we're at today. That's where the vexation and unreasonable conduct of the Respondent started. This questionnaire is the basis of everything. On its face, the questionnaire is inappropriate. It's not something that's allowed for under the Workers' Compensation Act. Can I ask a question? Why didn't you people get the Commission to answer the question as to whether those questions are appropriate or not? Well, that's a very good question. I don't know why the Commission didn't address that to begin with. This was presented to the Commission to give them the opportunity to address that issue. Now, the Commission didn't address it, number one. They should have addressed it. And number three, out of all of this, it doesn't exist under the Act. The 19-H is the remedy for this, not a questionnaire. Now, I know that Respondent is entitled to- I think, Mr. Alter, if I understand Justice Hoffman's question, we're in a procedural posture at this point. Is there a procedural remedy in the Act when the Commission doesn't address something that's presented to it? I would submit that it should be remanded back to the Commission to address the issue. No, no, no, no, no, no, no. On your part. On my part, there's a procedural issue that it wasn't addressed? No. A procedural avenue, pathway, to ask the Commission to make some findings on an issue that perhaps was overlooked before you go any further to make a decision. I apologize. Is there in the Act? Quite honestly, Your Honor, I'm not sure off the top of my head if there is or is not. I would have to do some research on that to give you a proper answer on that question. But assume, hypothetically, there was, then that would probably go a long way to solving your problem without having a finding. Well, but the issue in this case was the termination of benefits and the penalties petition that was filed on that behalf. The issue, what really wasn't the questionnaire, the issue that was arose that resulted in the petition being filed was the fact that benefits were terminated and which then presented with the petition for penalties for the termination of benefits. Well, yeah, but the question wasn't. I think what Justice Aldrich was aiming at is the benefits were terminated initially because you didn't answer the questionnaire. And so the question was, were you required to answer the questionnaire, yes or no? The commission never addressed it. The other thing the commission didn't address was whether the attorney's word that the guy was still alive was enough to satisfy the Act's entitlement to the employer to determine that he's still entitled to benefits because he's still alive. Right. And the concurrent opinion did address the fact that the attorney's word should have been sufficient as the officer of the court. But the commission never addressed it. I'm sorry? The commission never addressed it. The majority decision did not address it, John. And again, I think that all got lost in the issue of what was actually being presented in the petition, which was penalties for the nonpayment. The other problem that I have with this case is a simple problem. This case is, to me, a textbook example of inefficient attorney's time and court time, because the only thing that had to be done is when Israel asked for a photograph or a picture of him holding his I.D. card is all it had to be done was it had to be sent to him. That was it. This case would have been over. It never would have been. So the question is, you know, is prudence the better part of failure? I mean, shouldn't we avoid this kind of stuff just by, you know, doing a simple thing? And I don't disagree with you, Your Honor. But at the same time, the purpose behind the Act is in the petition for penalties is for that purpose alone is that the respondents don't have the unilateral right to terminate benefits. I agree that it may have been an easier path to get to where we are and resolve the issue at hand. But at the same time, respondent doesn't have an unfettered right to be sending out questionnaires, which, mind you, also the questionnaire was sent directly to the client, not to the petitioner's attorney. Counsel, I have no dispute with you that the commission should have determined whether the sending of this questionnaire was required under the Act and whether, based on the refusal to questionnaire, they could reasonably terminate benefits. I don't dispute that with you. My question is, after all of this hubbub about the questionnaire, Gallagher and Bassett backed off, and they turned around and said, send us a picture of him holding a periodical, send us a picture of him holding an ID, and we'll resume the benefits. No, you don't do it because they didn't accept your word. So, because of that, we have court time, appellate time, briefs by both parties. It occurs to me that that's not an efficient use of judicial time. I recognize your position, Your Honor, and I don't disagree that there may have been a path of least resistance, but I'm sure you know that in certain times that everyone kind of digs their into a situation and takes their position and lets the chips fall where they may with the justices who are going to decide what is right and what should be done. And again, this is one of those situations. This court actually addressed, again, a similar situation in the Jacobo decision about the respondent not paying benefits when it should pay benefits. So, could there have been a path of least resistance? Perhaps there may have been, but at the same time, I think there's a and that is, again, respondents doesn't have an unfettered right to either send questionnaires, and there's nothing under the act that allows them to do that. So, whether the commission addressed it, the fact is that it doesn't exist. You conceded in your brief that they had a right to make a determination as to whether your client was still alive. Yes. So, now, if they had sent an inquiry to your client and he had received it and said, send us a letter back and say you're alive, and he refused to answer the question, wouldn't they have a right to suspend their benefits? I would suggest, I suggest they do not because the remedy is 19-H. The award is entered. If they want to modify the award, the route is via 19-H. That's for a modification of the award, but as you can see, they have a right to make a determination. If they're making periodic payments for wage deferentialists, the guy is still alive. Now, if he refuses to respond to are you alive or aren't you alive, then in that particular case, it occurs to me they have a right to suspend the benefits until he answers the question, are you alive? And I, again, would submit the answer to the question alive and well is different than the questionnaire that was sent out. That's a different issue. You kept saying they have no unfettered right to suspend benefits. I'm suggesting to you under certain circumstances they do. The question in this case is, were they entitled to do it under the facts of this case? And I suggest that in the facts of this case, they weren't allowed to, but also I believe in general, if you look in just at the letter of the Workers' Compensation Act regarding what their rights are, just like there's other sections regarding the termination of benefits, which you're supposed to send a letter saying you're terminating benefits. This is a different situation. This is a permanent award. They have the right to go in on a 19-H to determine, modify, suspend benefits if he doesn't respond to that, but it's not the respondent who should have the ability to make that decision on its own. They're not judge and jury. They should have the commission through via 19-H make that determination. If he doesn't want to sign that petition, then the court has the right, the commission has the right to say, well, if you don't want to, if that's even accurate, then if you're not going to sign that affidavit, then you're going to terminate benefits. But it doesn't, there's no provision that says if a claimant post-award doesn't sign it alive and well, that the respondent has the right to unilaterally terminate benefits. Well, then what would the remedy be for a violation of their right to determine, continue existence? You say 19-H? 19-H. 19-H would prove his existence. But then it would continue to pay. I'm sorry, I apologize. They're not trying to modify the award. They're turning around and saying, you didn't prove you were alive. We're stopping these payments until you prove you're alive, and then we'll make the payments. There's no other, so it's an award that 19-H, and you'll have to forgive me, but I do have it here. They can modify the award. And again, you know, going from an award to no award is not a modification. Modification is when he's got a different physical condition than he had when it was originally done. And so they revisit the award to determine what his continued award should be. In this particular case, the question was, was he alive? So if I'm, again, off the top of my head, Your Honor, I believe that there is a provision that does allow for a respondent to file a petition to suspend benefits. I'm not sure if that's under 19-B or what that is, but they have the same right in an arbitration setting versus a commission setting to suspend benefits, to submit a petition to suspend benefits. Why would that be any different post-award than pre-award? Well, pre-award, there are circumstances where a respondent employer has a right to terminate benefits. For instance, if they're paying TTD and then get an opinion from their doctor saying no causal connection, they'll stop their TTD immediately, and they won't go into the commission to get permission to do it. That's what happens all the time. And so you take it back a step to the original thing that would happen. So in this case, and use this as a good example, they sent out this letter to an old address that the petitioner hasn't lived at, and he doesn't get it, so respondent can terminate benefits? Counsel, it's not the question of what went on in this case. I only raise the issue because you say they never have an unfettered right to terminate the benefit. Now, we're wasting the majority of your time because you want to talk about the facts of this case. Well, go ahead and talk about the facts of this case. Basically, Your Honor, we actually have had, during this discussion, we've had kind of hit on most of the issues. Again, it's the basis of the conduct of why they terminated the benefits. Whether or not that this is, again, it wasn't addressed by the conduct on their behalf. One, it was found by the commission to be vexatious and unreasonable. Then it turns it around onto the petitioner's conduct. So there's a bigger issue here as well that was addressed by the commission not following the Supreme Court's decision about the 19k penalty. Counsel, they actually turned it around based on the conduct of the petitioner's lawyer, not the petitioner. But either way, as his representative, you shouldn't be looking at the conduct of a petitioner at all. The K penalties are all based upon the respondent's actions. And this court found in Jacoby as well that sending a letter saying, if you don't pay by a certain time, I'm going to file a petition for penalties. This court didn't say, well, you shouldn't have that or that's an exacerbation of the situation. So basically, we don't have a right then to file a petition or just not say we're going to file a petition. You try to take, again, a path of least resistance and try to find that resolution to get this done. Hopefully that petition for penalties will resolve the situation and try to bring the parties closer together. I still submit, Your Honor, that looking at the facts of this case, that the conduct was vexatious and unreasonable. The commission found it that way. There was no reason why they should have then looked at petitioner's conduct or attorney's conduct to then stop the conduct that would respond and continue to engage in. Any questions, further questions from the court? Okay. Mr. Alter, you'll have time and reply. Thank you, Your Honor. I assume you concluded. I did. The red light went off, so I was respecting the court with the red light. That's fine. Thank you. So I didn't want to continue and disrespect anyone with the red light. It's perfectly understandable. Ms. Lafayette, you may respond. Thank you. If it would please the court, Michelle Lafayette on behalf of the City of Chicago, OEMC. I'd like to first address what Justice Holdred's question had been to counsel about whether there was a procedure by which a party could ask the commission to address a specific question. I pulled out my copy of the act as I was sitting here, and I couldn't specifically find it. I don't remember if it's in the rules or if it's in the act itself, but a party on review can put specific questions to the commission and ask that they be answered. So there is a mechanism in either the rules or the act that allows for that. I just wanted to address that because you had asked that question earlier. I'm sorry. Thank you. Thank you. In terms of the issue in this case, it really is a question of whether or not the commission's factual findings are against the manifest weight of the evidence, and if based on those facts, then it was an abuse of discretion for the commission to limit the period of temporary total disability, or I'm sorry, the period of penalties and attorney's fees, because they did assess penalties for a very limited period of time because in the commission's view, the respondent had not given the petitioner ample time to respond to the request that he verify that he is alive. I don't think it's unreasonable for an employer. Can I stop you there? Sure. The petitioner, the was alive. In the words of the petitioner, you went on a discovery spree to find out if you could get information for a 19-H, didn't you? The initial inquiry was a letter that was sent that actually said we need to do an alive and well check, and then there was an offer that he could provide the photograph or the... No, that was not the initial inquiry, ma'am. I've got the question here. You want me to read the eight or ten things you asked him? No, I know that's on there, and that's in the April 4th, 2022 email. There were actually interactions on March 2nd, there was a letter that was sent, and then March 15th and 16th, there was interaction that preceded the April 4th email with that. I'm not talking about the April 4th email. I'm talking about... I'll get you the date. Sometime early in 2022, Galdron Bassett sent an inquiry addressed to the complainant asking the following information. You really want me to read this all to you? No, no, no. No, I know what you're referring to, but... Yeah, and you asked... Did you have a right to ask those questions? An alive and well check? Yeah, I think in terms of an 8D1, not necessarily. Probably not. Okay, well, let's assume you didn't have a right to ask those questions, then it would necessarily follow he didn't have an obligation to answer. Correct. Although you sent them to the wrong address. Then after you finally send them to his lawyer, and emails go back and forth. At that particular point, I think it was Ms. Israel that said, look, send us a picture with an ID or send us a picture with a periodical and we'll resume the payments. And Mr. Repelka digs his feet in and says, I told you, so I'm not going to give you anything. I'm going to file a petition for fees. Is that generally what occurred? Generally, yes. I mean... Okay, so now the question becomes, at what point in time did you have a right to suspend his benefits? I would contend that the city had a right to suspend the benefits at the point in time that the attorney refused to comply with having his client produce some sort of documentation or evidence that he was alive. Okay, and that's entirely different than what the commission did, isn't it? Well, what the commission did is they... The commission looked at it and said, when the city sent the... Gallagher Bassett on behalf of the city sent the request for an alive and well check on March 2nd, 2022. They did not give him sufficient time to respond. And they took the penalties through March 15th and 16th of 2022, when, in their words, the attorney probably exacerbated the situation by not cooperating. And what they found is that after the attorney said, we're not going to provide you with anything, whether it was the signed questionnaire, which the city was no longer looking for, a photograph or an affidavit from the client that he was alive and well, that's when they stopped the penalties. So they said at that point in time... Let me back up a little bit. On March 2nd, my reading of this says that Gallagher and Bassett sent a letter to the attorney stating that the wage differentials were suspended because you failed to respond and complete the questionnaire. Then subsequent to that, the attorney sends an email. That's March the 15th. Sends an email saying the claimant's alive and well. And in the event that you stop his payments, a petition for penalties is going to be filed. It isn't until March the 16th that Israel sends an email to the attorney stating that she wanted further proof that he was alive and well and requested an affidavit from the complainant to that effect, or a picture of him holding a periodical or his ID. Now that's March the 16th. March the 16th, the claimant's attorney sends an email back stating his words, the officer of the court was good, and if they didn't resume the payments, he was going to file a petition. The commission stopped it on March the 16th, allegedly because they felt, I guess, that the petitioner's attorney was being a little obstreperous. Okay, what I'm seeing is March 2nd, they send the notification that benefits are being suspended. March 15th, Kim Israel sends an email to Michelle in opposing counsel's office that here's the attached letter we spoke of. If you can get a list together, I will make note of all your client's claims and send an email rather than letter, U.S. mail. The attorney responds, Kim, my client is alive and well. Issue the check or we will file a petition for penalties and attorney's fees. Kim responds and said, we still need proof that your client is alive. Please send in a signed affidavit from your client or a picture with him holding a current periodical in his ID. And the attorney responds, I gave you proof by giving you my word. I'm an officer of the court. I think that's what I said. Yeah, but then there's an April 4th email where another adjuster, Jeanette Estrella, says have Mr. Conklin sign the attached questionnaire. And the attorney responds and said, show me the provision of the act that gives you the right to this information. So the Gallagher on behalf of the city had already said a photograph with your client holding a current periodical. Heck, in this day and age, he could just take a cell phone that's dated and put it in front of himself and take a picture. Very simple. Or a signed affidavit from him is sufficient. They were not as of March, what date was that, 16th requiring that he sign that form. And that's the point in time at which based on these facts, the commission determined that the suspension of benefits was appropriate and supported by the evidence. I think inherent in here is the employer has a right to confirm that somebody is still alive. Because it's not what counsel was arguing going in under Section 19H for a modification of award. By statute, the claimant's entitlement to those benefits terminates with two things. Either he reaches the age of 67 and they terminate because of the age provision in the act, or they terminate because the claimant has passed away. And there's instances where claimants receiving a lifetime benefit pass away and somehow the employer is never notified of their death. I mean, we cite in our briefing, an ARDC decision where just that something similar to that happened and the attorney did not notify or represent to the city. Actually, it was the same employer in that instance of the city of Chicago that his client had passed away. So while we want to take attorneys at their word, it's not unduly burdensome, it's not intrusive to say to a claimant who's receiving a lifetime benefit that death triggers it. You just need to periodically, usually once a year, just send us a picture of yourself, send us an affidavit that says you're still alive so that we can continue the benefits uninterrupted. Here what the commission recognizes is that it was the attorney himself that dug his feet in, got entrenched on this idea that as an officer of court, they had to take his word for it. And I would note that counsel doesn't cite anything in his brief as to the law or the statute that they're required to do that, or that any party is required to take an attorney's word for something. So I mean, really what you have is the commission looking at the facts and initially establishing what the facts are and their factual findings are not against the manifest weight of evidence. And then within their power, making a discretionary decision whether to impose penalties past that March 16th date, and they determined not to impose penalties after that date. And that's a reasonable finding on their part. And that's their exercise of discretion in this instance. On that basis, we would ask that the court just affirm the finding and the limited award of penalties that they did make as to the period of time in which the employer's withholding of benefits as the commission found was not reasonable, and deny the penalties as the commission did finding that the employer reasonably withheld them after March 16th, 2022 until the petitioner verified that he was alive and well. Because like you recognize, Justice Hoffman, this was something that could very easily have been fixed on March 16th. If the attorney had just had his client do one of two things, and there would have never been any interruption of benefits. Well, I suppose the underlying question is, on the issue of penalties and attorney's fees for non-payment of wage differential, isn't the relevant inquiry the behavior of the employer, not the behavior of the claimant's attorney. And in this particular case, they stopped the benefits on March 16th because of the behavior of the claimant's attorney. And my question is, is that the proper inquiry? Were you entitled to terminate the benefits when you did? Yes, I think the city was entitled to terminate the benefits as of that point in time because there had been no evidence provided that the claimant was alive. And at that point in time, the extent to which the attorney was protesting the production of any evidence that his client was alive, other than his word, it became reasonable for the respondent to then question that and require that they provide the affidavit or the photograph as proof that he's alive. The attorney's word is, take my word for it, he's alive here. And if you think back, I mean, what did Ronald Reagan say about Gorbachev, the old Russian proverb, trust but verify. And that's really what the employer is doing here is verifying just to make sure that the representation is accurate. And in this instance, I think you're also dealing with an employer that's unique because it's a government entity that is spending federal or taxpayer dollars and has an obligation to safeguard those. And if they're paying benefits to somebody who's not still alive and can't justify those payments, that's probably going to be on the headlines of the Chicago Tribune one day. So they're just verifying in an unobtrusive way, send us a picture, sign an affidavit. Heck, at one point it was just sign the form and don't even fill it out. Just give us something that says he's alive. Trust, but verify it. So your position also is, I assume, is that 19-H is not the proper mechanism to verify. Correct. Plus 19-H has time limits on it. You know, the 30 and 60 months, if you, claimants can pass away outside that time limit or inside that time limit. And you don't need to go to the commission to get benefits suspended when somebody passes away. You want to talk about an inefficient use of the commission's time, it probably would be if every employer had to go in in order to suspend benefits when somebody dies. The act is very clear, death triggers a determination of benefits. And just asking somebody to confirm I'm still alive for the continued payment of benefits is not unreasonable. It's not intrusive. It's not contrary to the act or the provisions of the act. Really, as the commission recognized here, the attorney really got this situation out of control. And the only person that suffered based on what the attorney did was his own client. Well, is it unreasonable to suggest that the city is out of control in, as Justice Hoffman's characterization, a backdoor discovery? Beyond just the simple question of being entitled because you're alive. Yeah, but as Justice Hoffman recognized the city back down on that, they weren't really looking for that information. They were just looking for the confirmation. Will the city be continuing to do this? They may have backed down in this instance. No, they're verifying that individuals are paying lifetime benefits. But it looks to me like it got out of hand from the Gallagher and Bassett standpoint of not relevant information for the job they're trying to permit it arguably to do. I would tend to agree with you. They're not entitled to that extent of the information, whether they're still sending out that questionnaire. I can't speak to that because I'm not familiar with what they're doing on each individual case at this point. Maybe then what we need is a statement by the commission that you're not entitled to ask these questions on an alive and well. Maybe if they would have made that decision, then we wouldn't even have the issue now. Possible. Yes. Red lights on as well. Any questions, further questions from the court? No. Okay. Thank you. Thank you. A reply, Mr. Alter. Yes, thank you, Your Honor. I'll be brief. Basically, counsel had mentioned that there was nothing mentioned in the brief about what provision it is about someone accepting the word of the of the of the judge. An attorney as an officer of the court, we all take oaths when we are, when we become attorneys with the Supreme Court and the oath states about telling the truth and whatnot and advocating for the client. So one, I think as an officer of the court that an entity should be able to take the word of an officer of the court and there are ARDCs there to rein in any attorneys who are not following or doing what they're supposed to be doing. If there is such instance where an attorney is providing false information to an insurance company to in your benefits, that attorney is going to have to suffer the consequences from the ARDC, whether it's licensing or fines and penalties, whatever the case may be. So I do submit that in that regard, the word of an officer of court does hold weight and should hold weight and in responding to questions in that regard. I think it all goes back again into the situation that what started all this was that questionnaire itself, not just the Alive and Well check. I think that that's the first and most important thing that we need to be looking at is the questionnaire itself. To take it the next step then is the response to that. Again, everyone dug their feet into it, but the bottom line I think comes down into that the respondent's conduct for purposes of 19K are what we should be looking at. Those benefits should have been reinstated as of March 16th. The conduct before that was vexatious and unreasonable. Nothing changed after March 16th. In fact, the respondent knew, well, should have known that the claimant was alive. The petition was getting on file and then a hearing was held. All the way up until the date of the hearing, benefits still weren't paid up until that in time and they knew that petition was alive. Officer of the court told them, petition's on file, benefits should have been at the respondent's conduct. The defendant's conduct in this case, not looking at an email saying if you don't tender benefits, we're going to file a petition. The attorney has the right to do that. There's nothing saying that you are not allowed to say that I'm going to file a petition. The alternative, basically what the commission is saying is that you shouldn't send an email that you're going to file a petition. My question really goes back to the commission then would be, well, if it comes down to you stop penalties because of the email saying you're going to if the petition wasn't filed, then their conduct would still be unreasonable and vexatious and you would have awarded penalties to the date of hearing or not file a petition on behalf of your client and then the benefits still aren't getting paid. It's inconsistent either way, but the message that the commission is sending is saying, well, you can't get penalties by looking at the conduct of the plaintiff, but the case law is clear on this issue. It's only to be looking at the respondent's conduct, an objectable, reasonable standard should not be turned back around on the plaintiff or his counsel or any actions in that regard. It's just the conduct of the respondent and their actions in this case. So again, the commission's decision is inconsistent in and of itself in that regard because the fact that penalties were stopped on that issue alone doesn't correlate with the law and the case law interpreting 19K. So with that, in that regard, I can briefly touch on the other issues if the court would like me to, but I do feel that in this case penalties should have been awarded up through the date of the hearing based upon the respondent's conduct up until that time. Their conduct was clear. I do understand that they're entitled to a potential alive and well check, but that's not what occurred in this place. Everyone dug their heels. Respondent is just as equal at fault of that as petitioner and the fact is the benefits were not reinstated and penalties should be assessed for that nonpayment of benefits up and through in time until the date of the hearing on this case. We can get and discuss the other issues. I think they're well briefed in the brief that they can speak for themselves. And with that, I'll open up any questions with my short time based upon the lights that is left. In order for us to give you the relief you asked for on appeal, do we have to accept the proposition that the attorney can respond for the client? Yes, and I believe that's the attorney's place to respond on behalf of the client, whether it's through filing motions. So if we don't agree with that, then we're not going to be able to give you the relief you're seeking. If you don't agree with the petitioner's attorney doesn't have the right to respond on behalf of the client, then it's insufficient for an alive and well for the attorney to say, take my word for it. And I apologize if I'm not following you, so. Well, my question, let me re-ask it. I probably didn't ask it right. You're saying we should reverse and give penalties all the way up to the date of the hearing, right? Yes. Assume we wanted to do that. Do we have to accept the proposition that the attorney's word is sufficient to establish alive and well? That's my question. Yes, Your Honor, and I believe it does. As an officer of the court, the oath that we take when we're initiated with the bar, I do believe so. Yes, Your Honor. And so that's the only authority you're offering is the oath? Yes, Your Honor. Thank you. Thank you for your time. Any further questions? No. Okay. Thank you, counsel, both for your arguments on this matter this afternoon. It will be taken under advisement and a written disposition shall issue.